# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARC T. TAYLOR, JR., | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 17-1664-LPS |
| | : | |
| ROBERT MAY, Warden, and | : | |
| ATTORNEY GENERAL OF THE | : | |
| STATE OF DELAWARE, | : | |
| | : | |
| Respondents.[1] | : | |

## MEMORANDUM OPINION

Marc T. Taylor, Jr. *Pro so* Petitioner.

Maria T. Knoll, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

August 26, 2021
Wilmington, Delaware

---

[1] Warden Robert May replaced former Warden Dana Metzger, an original party to the case. *See* Fed. R. Civ. P. 25(d).

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Pending before the Court is an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 and Amended Application (hereinafter collectively referred to as "Petition") filed by Petitioner Marc T. Taylor, Jr. ("Petitioner"). (D.I. 1) The State filed an Answer in Opposition, to which Petitioner filed a Reply. (D.I. 17; D.I. 23) For the reasons discussed, the Court will dismiss the Petition.

## II. BACKGROUND

As summarized by the Delaware Supreme Court in Petitioner's direct appeal, the facts leading up to his arrest and convictions are as follows:

> This [case] involves a number of crimes, including murders, attempted murders, assaults, and weapons charges, stemming from a dispute between two rival gangs in Wilmington, Delaware. One is a group of men who grew up together and are members of a rap group named the "TrapStars." Appellants [Petitioner] and Kevin Rasin are TrapStar members, as are Kevin Fayson, Terrance Mills, Darnell Flowers, Jeroy Ellis and Quincey Thomas. Robert Valentine and Terry Smith are known associates of the TrapStars. Initially, the TrapStars performed for street audiences and posted rap videos on YouTube wearing black hooded sweatshirts depicting their TrapStars logo. By 2008, the TrapStars had become a criminal street gang and sold drugs to finance their music-related endeavors. The rival gang, called "Pope's Group," also sold drugs and engaged in other illegal activities in West Wilmington. Pope's Group is a subset of the Latin Kings. The members of Pope's Group are Jose Charriez, Tyaire Brooks, Carlos Rodriguez, Carlos Rosa, David Hill, Carlos Callazo, Marcus Crawford, and Alvan Butcher. Jason Ortiz and Marco Cruz are Latin Kings.
>
> In December 2009, the two gangs started fighting. Brooks and Rodriguez burglarized Nakevis Walker's house, known as the "Trap House," which was the place where the TrapStars stored firearms, money, and drugs. Brooks and Rodriguez stole from the TrapStars because Mills owed them drug money. A few weeks later, Mills, his mother, and Ellis, confronted Brooks and Rodriguez on the street. That fight ended when Hill fired a gun into the air. Three weeks

later, Mills started another fight, this time with Rosa. Ellis, Brooks, and Hill [] present, and the fight ended when Hill took Mills' gun and aimed it at Mills.

The fighting escalated in February 2010, when Fayson and a Latin King gang member were involved in a drug deal that culminated in the murder of Anthony Doyle. Hill was related to Doyle. A few days after Doyle's murder, Hill shot at Fayson in front of a Metro PCS store. On April 3, 2010, Brooks, Hill, Charriez and Rosa went to Mills' house. Hill shot through Mills' front door, almost hitting Mills' sister. The police arrested Charriez and Hill.

The next day, the TrapStars, including Rasin and [Petitioner], met at Fayson's house to plot revenge. They agreed to post lookouts with weapons in the area of Franklin and 3rd Street. On April 5, 2010, Rodriguez and Brooks became suspicious when they noticed Mills and Thomas in a car, circling the block. One of the two Pope's Group members contacted Butcher, who joined them, and gave Rodriguez a gun. During the gun battle that followed, Butcher was killed. The next day, someone set Ellis's car on fire. After Butcher's murder, the war between the two gangs intensified. Pope's Group members were instructed to shoot TrapStars "on sight." On April 30, 2010, Fayson, accompanied by Rasin, and armed with a gun allegedly procured through [Petitioner], repeatedly shot at Jazzmon Smith and Kenneth Swanson, who were in a maroon colored car. Rasin and Fayson then fled in Rasin's Pontiac. Fayson gave the gun to Rasin.

On May 3, 2010, Crawford and Charriez were driving down Adams Street. When they stopped at a red light, Rasin ran into the street behind their car and started shooting at them. Charriez was shot in the head and killed. At the time of the shooting, [Petitioner], Valentine, and Fayson were with Rasin at the intersection where Charriez was killed. Rasin gave [Petitioner] the murder weapon to clean and reload.

On May 6, 2010, [Petitioner] was shot while walking in the 800 block of North Adams Street. [Petitioner] survived the shooting and ran into a nearby apartment. When the police arrived at the scene, they traced [Petitioner's] steps, and found a handgun in the apartment. That gun was later connected to previous homicides. On May 15, 2010, [Petitioner] thought Larry Whye, a person he did not know, was following him. [Petitioner] shot Whye in the hand. Whye apparently was unaffiliated with either the TrapStars or Pope's Group.

2

> [Petitioner] was arrested on August 10, 2010, and indicted on 11 felony counts, including gang participation, second degree conspiracy, possession of a firearm by a person prohibited, second degree assault, possession with intent to deliver, and resisting arrest. Rasin was arrested on September 17, 2010, and indicted on 14 felony counts, including gang participation, two counts of first degree murder, two counts of attempted murder, second degree conspiracy, and possession of a firearm during the commission of a felony. Six other TrapStars co-defendants pled guilty. Rasin and [Petitioner] went to trial. Rasin was acquitted on one count of attempted murder and one count of possession of a firearm during the commission of a felony. He was convicted on all other charges. [Petitioner] was acquitted on the charges of conspiracy, resisting arrest, and possession with intent to deliver, but was found guilty on the lesser included offense of simple possession. [Petitioner] was found guilty on all remaining counts.

*Taylor v. State*, 76 A.3d 791, 795-97 (Del. 2013). On May 23, the Superior Court sentenced Petitioner to a total of fifteen years and six months at Level V incarceration, followed by decreasing levels of supervision. *See Taylor v. State*, 149 A. 3d 241 (Table), 2016 WL 5899236 (Del. Oct. 10, 2016). The Delaware Supreme Court affirmed Petitioner's convictions and sentences on September 25, 2013. *See Taylor*, 76 A.3d at 797, 799.

On November 13, 2013, Petitioner filed in the Superior Court a motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 17 at 2) The Superior Court appointed counsel to represent Petitioner in the Rule 61 proceeding but, after reviewing the case, post-conviction counsel filed a motion to withdraw from representing Petitioner. (D.I 17 at 2) On December 17, 2015, the Superior Court granted post-conviction counsel's motion to withdraw at the same time that it denied Petitioner's Rule 61 motion. *See State v. Taylor*, 2015 WL 9592457 (Del. Super. Ct. Dec. 17, 2015). The Delaware Supreme Court affirmed that decision on October 10, 2016. *See Taylor*, 2016 WL 5899236, at *3.

On July 19, 2017, Petitioner filed a second Rule 61 motion. *See State v. Taylor*, 2017 WL 5054262 (Del. Super. Ct. Oct. 23, 2017). The Superior Court summarily dismissed the Rule 61 motion as conclusory and repetitive. *Id.* Petitioner did not appeal that decision.

## III.  GOVERNING LEGAL PRINCIPLES

### A.  Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see also Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to

consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in

5

the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see also Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

### B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

6

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies both to explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003).

## IV. DISCUSSION

The State contends that the instant Petition is time-barred by AEDPA's one-year statute of limitations. (D.I 17 at 6-10) Having reviewed the record, it is evident that the Petition will be time-barred if Petitioner's second Rule 61 motion does not trigger statutory tolling. The State argues that the Superior Court's dismissal of the second Rule 61 motion as successive demonstrates that it was not properly filed and, therefore, that it cannot statutorily toll the limitations period under § 2244(d)(2). (D.I. 17 at 8-9) Neither the Supreme Court nor the Third Circuit have addressed this particular issue. *See, e.g., Wessel v. Warren*, 2017 WL 4861618, at *4 (D.N.J. Oct. 27, 2017) (noting that Third Circuit has not ruled on this issue). Since the statute of limitations defense is not a jurisdictional bar for habeas petitions,[2] the Court will exercise prudence and consider the Petition as though timely filed.

The Petition asserts the following four grounds for relief: (1) Petitioner is being held in violation of the Fourth Amendment because there is a "piece of evidence that may prove [his] evidence that's been withheld and never presented to [him] or [defense counsel]"; (2) his rights under the Fourteenth Amendment have been violated because several witnesses testified falsely at his trial in exchange for immunity; (3) defense counsel provided ineffective assistance by failing to: (a) "strategize" with him when a juror conversed with other jurors about a personal situation that

---

[2] *See Holland v. Florida*, 560 U.S. 631, 645 (2010).

7

could have caused a "chain-reaction of the verdict" and (b) obtain severance of his trial from that of Kevin Raisin; and (4) post-conviction counsel provided ineffective assistance by failing to: (a) acknowledge his conflict of interest and withdraw from Petitioner's case and (b) meet Petitioner's demands and communicate with Petitioner. (D.I. 1 at 4-9)

### A. Claims One and Two: Procedurally Barred

In Claim One, Petitioner asserts that the Superior Court docket indicates a sealed document was filed that was not presented at trial or provided to him or defense counsel. (D.I. 1 at 4; D.I. 23 at 2) As a result, Petitioner contends he is being held in violation of the Fourth Amendment because the document may have proven his innocence. Although Petitioner raised Claim One in his second Rule 61 motion, he did not appeal the Superior Court's denial of that motion and, therefore, did not present Claim One to the Delaware Supreme Court. Given these circumstances, Petitioner did not exhaust state remedies for Claim One.

In Claim Two, Petitioner argues that his rights under the Fourteenth Amendment were violated because several witnesses testified falsely at his trial in exchange for immunity. Petitioner presented Claim Two to the Superior Court in his first Rule 61 motion, which denied it as meritless. Although Petitioner appealed the Superior Court's decision, he did not include Claim Two in his appeal to the Delaware Supreme Court. Therefore, Petitioner did not exhaust state remedies for Claim Two.

At this point, any attempt by Petitioner to raise Claims One and Two in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and barred as second or successive under Rule 61(i)(2). Since there is no indication that Rule 61(d)(2)

and (i)(5)'s exceptions to the bars in Rule 61(i)(1) and (2) apply in this case,[3] any attempt to exhaust state remedies would be futile. Given this futility, the Court must treat Claims Two and Three as technically exhausted but procedurally defaulted, meaning that the Court cannot review the merits of the Claims absent a showing of cause and prejudice or that a miscarriage of justice will result absent such review.

Petitioner does not assert any cause for his default of Claims One and Two. Although Petitioner implicitly presents in this Petition an argument that post-conviction counsel in his first Rule 61 proceeding provided ineffective assistance, he does not assert post-conviction counsel's failure to present Claims One and Two in his Rule 61 motion as one of the allegations of ineffective assistance. Even if the Court were to liberally construe Petitioner's assertions regarding post-conviction counsel's alleged ineffective assistance as an attempt to demonstrate cause under *Martinez v. Ryan*, 566 U.S. 1, 12, 16-17 (2012), it would be unavailing. In *Martinez*, the Supreme Court held that inadequate assistance or the absence of counsel during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel. In order to obtain relief under *Martinez*, a petitioner must demonstrate that the state did not appoint counsel in the initial-review collateral proceeding or there was ineffective assistance of counsel during the initial collateral proceeding; that the underlying ineffective assistance of trial counsel claim is substantial; and that he was prejudiced. *Id.* at 14-17. A "substantial" ineffective assistance of trial counsel claim is one that has "some" merit" which, given

---

[3] Delaware Superior Court Criminal Rule 61(d)(2) and (i)(5) provide that the procedural bars to relief in Rule 61(i)(1), (2), (3), and (4) do not apply to a claim that the court lacked jurisdiction or if the petitioner pleads with particularity either that (1) new evidence exists that creates a strong inference that he is actually innocent or (2) a new rule of constitutional law, made retroactive on collateral review, applies to his case and renders his conviction invalid. *See* Del. Super. Ct. Cr. R. 61(d)(2) and (i)(5). Petitioner does not allege a valid claim of actual innocence; nor does he allege a lack of jurisdiction or that a new rule of constitutional law applies to his Claims.

9

the *Martinez* Court's citation to *Miller-El v. Cockrell*, 537 U.S. 322 (2003), appears to be governed by the standards applicable to certificates of appealability. *See Martinez*, 566 U.S. at 13. Significantly, the *Martinez* Court explicitly limited its rule, stating that the "holding in this case does not concern errors in other kinds of proceedings, including appeals from initial-review collateral proceedings." *Id.* at 16. The Supreme Court explained that, "[w]hile counsel's errors in these [other kinds of] proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding." *Id.* at 11.

Here, *Martinez* cannot excuse Petitioner's default of Claims One and Two because these Claims do not allege ineffective assistance of trial counsel. In the absence of cause, the Court will not address the issue of prejudice. Additionally, the miscarriage of justice exception cannot excuse Petitioner's default, because he does not assert any new reliable evidence of his actual innocence. For all of these reasons, the Court will deny Claims One and Two as procedurally barred.

### B. Claim Three: Ineffective Assistance of Defense Counsel

In Claim Three, Petitioner contends that defense counsel provided ineffective assistance by failing to: (a) "strategize" with him when a juror conversed with other jurors about a personal situation that could have caused a "chain-reaction of the verdict"; and (b) obtain severance of his trial from that of Kevin Raisin. Although Petitioner did not include Claim Three (a) in his first Rule 61 motion, he did include Claim Three (b). The Superior Court denied Claim Three (b) as meritless. *See* Taylor, 2015 WL 9592457, at *1-2. Petitioner presented both sub-arguments of Claim Three to the Delaware Supreme Court in his post-conviction appeal. The Delaware Supreme Court affirmed the Superior Court's denial of Claim Three (b). *See Taylor*, 2016 WL 588236, at *2. Since Petitioner presented Claim Three (a) for the first-time on post-conviction appeal, however, the Delaware

10

Supreme Court only reviewed the argument for plain error under Delaware Supreme Court Rule 8. *Id.* After explaining that Petitioner's contentions in Claim Three (a) "are entirely conclusory and lacking any factual support or citation to the record," the Delaware Supreme Court stated it was rejecting Claim Three (a) because it found no plain error. *Id.* at *2.

While the Delaware Supreme Court's application of Rule 8 would normally lead the Court to engage in procedural default analysis, the State appears to have waived the procedural bar and, instead, asserts that Claim Three (a) lacks merit. (D.I. 17 at 16-17) Given these circumstances, the Court will review both sub-arguments of Claim Three under the deferential standard in § 2254(d)(1).

The Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See id.* 466 U.S. at 698.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong

11

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

With respect to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Here, the Delaware Supreme Court decision was not contrary to *Strickland*; it correctly identified the *Strickland* standard applicable to Claim One. *See Taylor*, 2016 WL 5899236, at *2 n. 6 & 8; *see also Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The Court must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. When considering the second prong of the § 2254(d) inquiry, the Court must review the Superior Court's decision with respect to Petitioner's ineffective assistance of counsel Claims through a "doubly deferential" lens.[4] *See Richter*, 562 U.S. at 105. The relevant question when analyzing counsel's performance under the "doubly deferential

---

[4] As explained by the *Richter* Court,

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

lens" "is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* In turn, when assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* Finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

### 1. Claim Three (a)

In Claim Three (a), Petitioner contends that defense counsel provided ineffective assistance by failing to "strategize with [him] during trial when a jury member conversed with other jurors about a family member being murdered and that could've caused a chain reaction of the verdict." (D.I. 1 at 8) In his Reply to the State's Answer, Petitioner supplements Claim Three (a) by stating that defense counsel should have moved to have an additional "voir dire [of the] entire juror panel due to Juror #11 coming forward [after] fail[ing] to address the court during jury selection that her brother was killed." (D.I. 23 at 3) Petitioner contends that Juror No. 11 and other members of the jury should have been excused if Juror No. 11 shared that information, because such information would have biased the jury. *See id.*

A habeas petitioner "cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations." *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir.1991). In his Rule 61 motion, when asserting the juror misconduct issues as a matter of general trial error, Petitioner stated, "Even though both [jury] issues [were] addressed in the judge's chambers, everyone agreed for them to remain on the panel." (D.I. 15-9 at 81) This statement indicates that defense counsel

13

did address the issue of Juror No. 11 with the trial court. To the extent defense counsel raised the issue about Juror No. 11's sharing of information to the trial court and then agreed to retain that juror, Petitioner's conclusory and vague allegation of bias fails to demonstrate that counsel's decision was unreasonable. Similarly, to the extent defense counsel raised the issue of Juror No. 11 and the trial court overruled counsel's objection, Petitioner's vague and conclusory allegation of bias fails to demonstrate that defense counsel performed deficiently. Finally, Petitioner's vague and conclusory allegation of bias fails to demonstrate a reasonable probability that the result of his trial would have been different but for defense counsel's actions concerning Juror No. 11.

Additionally, as noted by the State, Petitioner's co-defendant Rasin unsuccessfully raised substantially the same ineffective assistance of counsel claim in his first Rule 61 motion. (D.I 17 at 17); *see Rasin v. State*, 2018 WL 2355941, at *1 (Del. May 23, 2018). Rasin argued that counsel was ineffective for not requesting a mistrial due to potential bias of a juror whose brother had been murdered. *See id.* The Superior Court held that counsel had acted reasonably in responding to potential juror bias and, even if counsel had not, Rasin failed to show he suffered prejudice. (D.I. 17-1 at 8) The Superior Court explained:

> Defendant has failed to demonstrate that by failing to request a mistrial or further inquiry into the Juror No. 11 issue trial counsel was ineffective pursuant to the two-prong *Strickland* test. Defendant's counsel and counsel for the co-defendant failed to object to Juror No. 11's explanation of her potential bias and that she mentioned it to another member of the jury. The apparent incident had occurred 27 years earlier. The Court observed that Juror No. 11's demeanor was "excellent." As any prejudice to the jury would have affected both defendants, the fact that neither counsel objected is evidence that their actions did not fall below an objective standard of reasonableness.
>
> Also, Defendant has failed to show that counsel's actions were dispositive to Defendant's conviction, that is, that there was a "reasonable probability that, but for counsel's unprofessional errors,

14

> the result of the proceeding would have been different." Defendant merely proffers that "it was impossible to determine whether Defendant had an impartial jury." Without more, mere conjecture of juror bias is insufficient to warrant additional inquiry by the court. Defendant's ineffective assistance of counsel claim as to the Juror No. 11 issue is thus unavailing.

(D.I. 17-1 at 8) The Court views the Superior Court's decision in *Rasin* as additional support for its conclusion that Petitioner has failed to satisfy the *Strickland* standard for Claim Three (a) in this proceeding. Therefore, the Court will deny Claim Three (a) as meritless.

### 2. Claim Three (b)

In Claim Three (b), Petitioner contends that defense counsel provided ineffective assistance by failing to file a motion to sever his trial from Rasin's. The Superior Court rejected Claim Three (b) after applying the four-factor test established in *Floudiotis v. State*, 726 A.2d 1196, 1210 (Del. 1999), and concluding that it would not have severed the trials even if Petitioner had asked. *See Taylor*, 2015 WL 9592457, at *2. On post-conviction appeal, the Delaware Supreme Court agreed that a motion to sever would have been denied because three of the four *Floudiotis* factors did not favor severance. *See Taylor*, 2016 WL 5899236 at *2. Consequently, the Delaware Supreme Court held that defense counsel did not provide ineffective assistance under *Strickland* because the failure to file a meritless motion to sever did not prejudice Petitioner. *Id.*

An attorney does not provide ineffective assistance by failing to raise meritless objections or file meritless motions. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir.1999). In turn, on habeas review, the Court must accept as correct the Delaware Supreme Court's interpretation and application of Delaware law.[5] *See Bradshaw v. Richey*, 546 U.S. 74 (2005). For these reasons, the

---

[5]In fact, as noted by Petitioner's post-conviction counsel in his motion to withdraw, the trial court actually denied a motion for relief from prejudicial joinder that was filed by one of Petitioner's other co-defendants, Jeroy Ellis. (D.I. 15-9 at 66 n.32)

15

Court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying Petitioner's allegation regarding counsel's failure to file a severance motion.

### C. Claim Four: Ineffective Assistance of Postconviction Counsel

The "federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation." *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998). In addition, a claim asserting the ineffective assistance of post-conviction counsel does not assert an issue cognizable on federal habeas review, because a petitioner does not have Sixth Amendment right to counsel in collateral proceedings. *See Martinez v. Ryan*, 566 U.S. 1, 9 (2012) (refraining from recognizing or creating automatic constitutional right to counsel in collateral proceedings). In Claim Four, Petitioner contends that postconviction counsel provided ineffective assistance by failing to: (1) acknowledge his conflict of interest and withdraw from the case; and (2) meet Petitioner's demands and communicate with Petitioner during their short time together. The Court will deny Claim Four because it does not assert an issue cognizable on federal habeas review.

## V. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *See also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

16

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## VI. CONCLUSION

For the reasons discussed, the Court will deny the Petition without holding an evidentiary hearing. An appropriate Order will be entered.